## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,** | |
| Plaintiff | **Case No. 6:21-cv-768** |
| v. | **JURY TRIAL DEMANDED** |
| **TARGET CORPORATION** | |
| Defendant | |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Target Corporation ("Target" or "Defendant"), and alleges, On information and belief, as follows:

### THE PARTIES

1.  GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  On information and belief, Target is a domestic corporation organized and existing under the laws of Minnesota, with its headquarters located in Minneapolis, Minnesota. Target may be served through its registered agent in the State of Texas at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. On information and belief, Target sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing systems into the stream of commerce knowing and

intending that they would be extensively used in the State of Texas and in this judicial District. On information and belief, Target specifically targets customers in the State of Texas and in this judicial District.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.   This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and mobile applications) its services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.  On information and belief, Target fulfills orders using the infringing systems and methods. *See* Figure 1 below.



Figure 1[1]

5.       On information and belief, Defendant maintains an ongoing and continuous business presence in the State of Texas and specifically within this District, which is illustrated by the fact that Target has multiple retail stores located within this District. *See* Figures 2 and 3 below.

---

[1] Source, as visited on July 26, 2021: https://corporate.target.com/about/products-services/pickup-delivery



Figure 2[2]



Figure 3[3]

---

[2] Source, as visited on July 26, 2021: https://www.target.com/store-locator/find-stores/Waco,TX
[3] Source, as visited on July 26, 2021: https://www.target.com/sl/waco/1531

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                4

6.      Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C.

§§ 1391(c)(2) and 1400(b).   As noted above, Defendant maintains a regular and established

business presence in this District.


## PATENTS-IN-SUIT

7.      GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194

Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the

'000 Patent") (hereinafter collectively referred to as "the GGS Patents").

8.      The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of

the United States Code.

9.      The inventions described and claimed in the GGS Patents were invented by Raymond Anthony

Joao.

10.     The GGS Patents each include numerous claims defining distinct inventions.

11.     The priority date of each of the GGS Patents is at least as early as July 31, 1999.   As of the

priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-

routine.

12.     For example, and as evidence of the stated non-routine aspects of the inventions, during

prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864

Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision

in *Alice*.   The patent examiner affirmatively and expressly found that the claims are in fact patent

eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject

matter, because none of the pending claims are directed to an abstract idea, and because there

would be no preemption of the abstract idea or the field of the abstract idea.


ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    5

13.     GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent, the
        '086 Patent, the '864 Patent, and the '000 Patent (collectively as the "Asserted Patents").

14.     The '194 Patent relates generally to an apparatus and method for providing recruitment
        information, including a memory device for Storing information regarding at least one of a job
        opening, a position, an assignment, a contract, and a project, and information regarding a job
        Search request, a processing device for processing information regarding the job Search request
        On a detection of an occurrence of a Searching event, wherein the processing device utilizes
        information regarding the at least one of a job opening, a position, an assignment, a contract, and
        a project, Stored in the memory device, and further wherein the processing device generates a
        message containing information regarding at least one of a job opening, a position, an
        assignment, a contract, and a project, wherein the message is responsive to the job Search
        request, and a transmitter for transmitting the message to a communication device associated
        with an individual in real-time.  *See* Abstract, '194 Patent.

15.     The '086 Patent relates generally to an apparatus, including a memory device which stores
        information regarding a job opening, position, assignment, contract, or project, and information
        regarding a job search request or inquiry, a processing device which processing the information
        regarding a job search request or inquiry On an automatic detection of an occurrence of a
        searching event which is an occurrence of a job posting, a posting of new or revised data or
        information, a news release of a business event, an employment-related event, an economic
        report, industry-specific news, an event which creates an to fill a position, or an event which
        creates an interest to seek a position, and generates a message, containing the information
        regarding a job opening, position, assignment, contract, or project, responsive to the job search

request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual.  *See* Abstract, '086 Patent.

16.    The '864 Patent relates generally to an apparatus, including a memory device for storing work schedule information or scheduling information for an individual, a transmitter for transmitting a job search request to a computer, wherein the computer is specially programmed for processing the job search request, for generating a message containing information regarding a job opening, a position, an assignment, a contract, or a project, and for transmitting the message to the apparatus in response to the job search request; a receiver for receiving the message; and a display for displaying at least some of the information contained in the message.  *See* Abstract, '864 Patent.

17.    The '000 Patent relates generally to an apparatus, including a memory which stores work schedule information or scheduling information for an employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; a receiver which receives a first request to obtain work schedule information or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer, and the first request is received from a first communication device; a processing device, specially programmed for processing information contained in the first request, generates a first message containing the work schedule or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; and a transmitter for transmitting the first message to the first communication device or to a second communication device.   The apparatus processes information in a second request.  Information contained in the second request is based on the work schedule information or the scheduling information contained in the first message. *See* Abstract, '000 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                         7

18.    As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999.  At that time, the idea of launching Target.com was still several years away.

19.    The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

20.    Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

21.    Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

22.    The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[j]ob searching activities and recruitment activities typically require efforts in introducing parties to one another, pre-screening the parties prior to, and/or subsequent to, an introduction, acting as an information gathering entity for a party, exchanging information in order to determine if a relationship is appropriate and/or desirable, negotiating a deal, and/or consummating a deal between the respective parties.  While individuals and/or employers and/or hiring entities can act on their own behalf during most of the process, one of the parties may typically enlist the efforts of an employment agency or agencies, a recruiter(s), a so-called 'headhunter(s)', an employment and/or career consultant(s), a temporary employment agency or agencies, a personal agent(s), a personal manager(s), and/or another intermediary or intermediaries, sometimes at great

expense." '194 Patent at 1:59-2:6.  The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings to all parties.  As explained, as of the date of invention, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts, limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment agency, personal agent, personal manager, and/or other intermediary."  *Id.* at 2:7-17.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for a costly middle-man in the process is overcome.  *Id.* at 2:18-24; 6:45-55.

23.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and recruitment efforts may be limited by and/or be constrained by limited personal contacts, geographical constraints, monetary constraints, and/or time constraints.  Oftentimes, individuals, employers and/or hiring entities, do not have the resources to conduct their own respective job searching efforts or recruitment efforts.  The enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, may not be sufficient to overcome these limitations and/or constraints, particularly, if the respective employment agency or agencies, recruiter(s), so-called 'headhunter(s)', employment and/or career consultant(s), temporary employment agency or

agencies, personal agent(s), personal manager(s) and/or other intermediary or intermediaries, are working with similar limitations and/or constraints." *Id.* at 2:26-42. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for extensive personal contacts and geographical proximity are overcome.

24.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time. As explained, as of the date of invention, "[t]he job search process and/or the recruitment process can typically be rendered more difficult in instances when additional information may be requested by one or by both of the parties concerning a counterpart. This typically results in time delays and/or additional expense to the party having to comply with such a request." *Id.* at 2:43-48. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for time-consuming delays is overcome.

25.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time. As explained, as of the date of invention, "[j]ob searching efforts and/or recruitment efforts may further be rendered more difficult when the parties are not properly pre-screened, thereby resulting in wasted time and effort, and/or when the parties are not properly informed as to the needs and/or demands of a counterpart. The needs and/or demands can include job description, job needs, project description, assignment description, salary, compensation, and/or other related information. The failure to pre-screen the parties and/or to conduct a dialog and/or initiate interviews and/or discussions when the parties may be so far apart regarding their respective needs, requests and/or expectations, for example, those involving job duties and/or salary, can result in wasted time and effort." *Id.* at 2:49-61. As such, the inventions as claimed provide non-conventional solutions to

the conventional problems of the day because the associated time and effort are reduced, resulting in more efficient processes and cost savings for all involved.

26.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[c]onfidentiality is typically another concern in job searching activities and/or in recruitment activities.  Individuals, employees, and/or hiring entities may have an interest in, and/or a desire for, maintaining confidentiality during at least some initial stages of any job search and/or recruitment effort.  In some instances, once an initial interest is expressed, any confidentiality which may have existed may be lost for the remainder of the process.  Sometimes, it may be desirable for an individual, an employer and/or hiring entity, to retain at least some level of confidentiality and/or anonymity further into the job search and/or recruitment process.  In this manner, at least some confidentiality and/or anonymity can be preserved, especially if a deal between the parties is not ultimately reached." *Id.* at 2:62-3:8.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for confidentiality in the process is enhanced.  *See id.* at 6:59-65.

27.    As noted above, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea, and there would be no preemption of the abstract idea or the field of the abstract idea.  For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

28.     The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During

the examination of the '194 Patent, the United States Patent Examiner searched for prior art in

the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

29.     After conducting a search for prior art during the examination of the '194 Patent, the United

States Patent Examiner identified and cited the following as the most relevant prior art references

found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor;

(iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768,

11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001,

Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x)

6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

30.     After giving full proper credit to the prior art and having conducted a thorough search for all

relevant art and having fully considered the most relevant art known at the time, the United

States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is

presumed that Examiner Colby used his or her knowledge of the art when examining the claims.

*K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further

presumed that Examiner Colby has experience in the field of the invention, and that the

Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277

F.3d 1338, 1345 (Fed. Cir. 2002).

31.     The '194 Patent is a pioneering patent, and has been cited as relevant prior art in over 250

subsequent United States Patent Applications, including Applications Assigned to such

technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Oracle, Amazon, Monster,

and CareerBuilder.

32. The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

33. After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

34. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

35. The '086 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Xerox, Yahoo!, EDS, Microsoft, CareerBuilder, Monster, LinkedIn, and IBM.

36.     The '864 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '864 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758.

37.     After conducting a search for prior art during the examination of the '864 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark; (ii) 5,758,324, 5/1998, Hartman; (iii) 5,832,497, 11/1998, Taylor; (iv) 5,862,223, 1/1999, Walker; (v) 5,884,270, 3/1999, Walker; (vi) 5,884,272, 3/1999, Walker; (vii) 5,978,768, 11/1999, McGovern; (viii) 6,157,808, 12/2000, Hollingsworth; (ix) 6,266,659, 7/2001, Nadkarni; (x) 6,370,510, 4/2002, McGovern; (xi) 6.381,592, 4/2002, Reuning; (xii) 6,398,556, 6/2002, Ho; (xiii) 6,408,337, 6/2002, Dietz; (xiv) 6,409,514, 6/2002, Bull; (xv) 6,466,91, 10/2002, Mitsuoka; (xvi) 6,718,340, 4/2004, Hartman; (xvii) 6,873,964, 3/2005, Williams; (xviii) 7,054,821, 5/2006, Rosenthal; (xix) 7,305,347, 12/2007, Joao; (xx) 7,523,045, 4/2009, Walker; (xxi) 2001/0042000 Al, 11/2001, Defoor, Jr.; (xxii) 2002/0002476 A1, 1/2002, Mitsuoka; (xxiii) 2002/0152316 A1, 10/2002, Dietz; and (xxiv) 2005/0010467 A1, 1/2005, Dietz.

38.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '864 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

39.     The '864 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Xerox, Amazon, Monster, HP, CareerBuilder, Microsoft, LinkedIn, and General Electric.

40.     The '000 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '000 Patent, the United States Patent Examiner searched for prior art across multiple classifications.

41.     After conducting a search for prior art during the examination of the '000 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,884,272, 3/1999, Walker; (ii) 6,266,659, 7/2001, Nadkarni; (iii) 6,370,510, 4/2002, McGovern; (iv) 6,457,005, 9/2002, Torrey, (v) 7,305,347, 12/2007, Joao; and (vi) 2002/0120532 A1, 8/2002, McGovern.

42.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '000 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

43.     The '000 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such

technology leaders as Ricoh, Robert Half International, General Electric, IBM, AT&T, HP, Yahoo!, Xerox, Monster, Amazon, CareerBuilder, Microsoft, Oracle, and LinkedIn.

44.   The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

45.   On information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides the "Shipt" platform via its wholly owned subsidiary Shipt, Inc.. *See* Figure 4 below. The Shipt platform comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing delivery of groceries and merchandise in the United States.  The Shipt platform comprises an apparatus with multiple interconnected infrastructures that infringe the Asserted Patents.  The public-facing aspect of the Shipt platform is the Shipt website, which is available at www.shipt.com, together with the associated Shipt applications for consumers and Shipt shoppers, respectively.  Collectively, all of the foregoing comprises the "Accused Instrumentalities."



Figure 4[4]

## COUNT I
## Infringement of U.S. Patent No. 6,662,194

46.     Plaintiff incorporates the above paragraphs by reference.

47.     Defendant has been on actual notice of the '194 Patent at least as early as the date it received service of this Original Complaint.

48.     On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

---

[4] Source, as visited on July 26, 2021: https://investors.target.com/news-releases/news-release-details/target-acquire-same-day-delivery-platform-shipt-inc-bolster/?_ga=2.92329881.587853418.1627319840-796294147.1627319840

49.     On information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

50.     The Accused Instrumentalities comprise an apparatus for providing recruitment information. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.    On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.  *See* Figures 5 and 6 below.



**Database Selection and Design**

Since the service needed to be in multiple regions, the team took a hard look at what persistence layer it could use. Initially, we leaned towards a relational database with one master and multiple read replicas. But the design was not truly multi-regional since it had to redirect traffic from one region to the other for storage. Then, we thought about multi-master databases like CockroachDB, but the response times for multi-phase commits and the relative inexperience with the product kept us away. Other teams at Shipt had been using AWS DynamoDB quite effectively, so we also evaluated DynamoDB. It seemed to meet most of our requirements — i.e multi-region replication using global tables, fast reads with the help of global indexes, and auto scaling. After doing a proof of concept, we decided DynamoDB was a good fit.

Figure 5[5]

[5] Source, as visited on July 26, 2021: https://shipt.tech/how-we-connect-members-and-shoppers-94b6aae71f8b

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    18



Figure 6[6]

51.  On information and belief, the Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters. *See* Figures 5 and 6 above.

52.  The Accused Instrumentalities comprise a memory device, which stores information regarding at least work schedule information and/or scheduling information for Shipt shoppers, each of whom are, on information and belief, employed by Shipt as independent contractors. *See* Figures 5 and 6 above and Figures 7 and 8 below. The Accused Instrumentalities store schedule information for each such shopper (independent contractor) by virtue of the Shipt Shopper App, which allows Shipt Shoppers to set their availability for fulfilling orders.  Figure 7 shows a description of the Shipt Shopper App for iOS, including examples of various user interfaces, which indicates that Shipt Shoppers can "set [their] own hours" and can "work part time, or 7 days a week." Figure 8 is an excerpt from a blog entry by a Shipt employee describing how customers and Shipt Shoppers are connected. Part of the process is to "get shoppers on schedule." The "Order

---

[6] Source, as visited on July 26, 2021: https://aws.amazon.com/dynamodb/#

Offering Service" receives an order from a customer "with metro, zone, and delivery time information on it" and "[b]ased on this information, the service finds all the shoppers who are on schedule for this metro/zone/time slot." Thus, the Shipt platform stores scheduling information for their shoppers. A memory device is necessarily required to store this information.



Figure 7[7]

[7] Source, as visited on July 26, 2021: https://apps.apple.com/us/app/shipt-shopper-shop-for-pay/id976353472#?platform=iphone

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT



Figure 8[8]

53.    The   Accused   Instrumentalities   comprise   a   receiver   for   receiving   a   first   request   from   a

communication device associated with a hiring entity (*e.g.,* the user of the Shipt Consumer App

for consumers and/or the user of the Shipt web page at Shipt.com).   On information and belief,

when a consumer seeks to place an order using the Shipt Consumer App or Shipt web page, a

first request is generated to obtain the work schedule information for the known available

independent contractors (Shipt Shoppers) in order to give users delivery time choices.   If

acceptable, the user has the option of choosing a delivery time, placing the order and completing

the transaction. *See* Figure 9 below, which is a screenshot from the Shipt Consumer App

showing the consumer that is placing an order the delivery windows that are available for the

---

[8] Source, as visited on July 26, 2021: https://apps.apple.com/us/app/shipt-shopper-shop-for-pay/id976353472#?platform=iphone

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                              21

order. A first request is necessarily generated to obtain the scheduling information for the known available Shipt Shoppers, and a receiver is necessarily required to receive this request.



Figure 9[9]

54.     The Accused Instrumentalities comprise a processing device for processing information contained in the first request, wherein the processing device generates a first message containing the at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer. *See* ¶ 53 above. A processing device is necessarily required to process the information contained in the first

---

[9] Screenshot taken on July 27, 2021 of the Shipt Consumer App running on an iPhone 12 Pro Max.

request that is generated by the Shipt Consumer App and to send the scheduling information ("first message") for available Shipt Shoppers to the Shipt Consumer App.

55.    The Accused Instrumentalities comprise a transmitter for transmitting the first message to the first communication device. *See* ¶¶ 53 and 54 above. A transmitter is necessarily required to transmit the scheduling information ("first message") for available Shipt Shoppers to the Shipt Consumer App.

56.    On information and belief, when a consumer submits an order using the Accused Instrumentalities, the order comprises a second request to engage and obtain the Shipt Shopper in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the Shipt Shoppers are notified via "push notification" when a new order is available for fulfillment. Shipt Shoppers are notified of available orders based on their proximity to the store that the consumer has ordered from.  An order is assigned to the first notified Shipt Shopper that accepts the order.  The second request is confirmed, and the consumer is given real-time information regarding the Shipt Shopper's progress via the Shipt Consumer App. *See* Figures 10 and 11 below. Figure 10 is a sample user interface from the Shipt Shopper App, showing the a list of pending orders available for fulfillment by the Shipt Shopper using the Shipt Shopper App. The Shipt Shopper can choose to fulfill an order by touching the "Claim Order" button. Figure 11



Figure 10[10]

57.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

58.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

---

[10] Screenshot taken on July 27, 2021 of the Shipt Consumer App running on an iPhone 12 Pro Max.

## COUNT II
## Infringement of U.S. Patent No. 7,490,086

59.     Plaintiff incorporates the above paragraphs by reference.

60.     Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of this Original Complaint.

61.     On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

62.     On information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

63.     The Accused Instrumentalities comprise an apparatus comprising a memory device, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.  *See* ¶ 50 above.

64.     On information and belief, the Accused Instrumentalities comprises data centers housing memory devices, processing devices, receivers, and transmitters.  *See* ¶ 50 above.

65.      The Accused Instrumentalities comprise a memory device, which stores information regarding individuals (Shipt Shoppers) available for applying for a job opportunity or hiring need (fulfilling an order from a Target customer).  On information and belief, the memory device stores information concerning Shipt Shoppers who are available and willing to accept

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    25

assignments (fulfilling customer orders).  Each such Shipt Shopper, on information and belief, is employed by Shipt as an independent contractors and are retained by Target customers using the Accused Instrumentalities to perform specific, defined tasks for the benefit of the customer.  *See* ¶ 52 above.

66.     The Accused Instrumentalities store work schedule information for each such Shipt Shopper (independent contractor) by virtue of the Shipt Shopper App, which allows Shipt Shoppers to set their availability for fulfilling orders.  Shipt Shoppers are notified of open delivery opportunities. *See* ¶¶ 52 and 56 above.

67.     The Accused Instrumentalities comprise a processing device which automatically detects searching events, which occur when a user of the Shipt platform places an order.  Each such order comprises a job posting for Shipt Shoppers, and otherwise comprises an event which creates an interest in an individual (the Shipt Shopper) to seek and accept the position.  *See* ¶¶ 52 and 56 above.

68.     The Accused Instrumentalities comprise a processing device which generates a message containing information regarding the individual (including but not limited to, availability, proximity, acceptance, identity, photo, estimated time of arrival, and location).  The message is transmitted to the user/consumer (employer or hiring entity) via the Shipt Consumer App or via the Shipt website.  *See* ¶ 53 above.

69.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

70.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III
## Infringement of U.S. Patent No. 9,760,864

71.     Plaintiff incorporates the above paragraphs by reference.

72.     On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

73.     On information and belief, Defendant has directly infringed at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

74.     The Accused Instrumentalities comprise an apparatus comprising a memory device, a receiver, a processor, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.  *See* ¶ 50 above.

75.     On information and belief, the Accused Instrumentalities comprises data centers housing memory devices, processing devices, receivers, and transmitters.  *See* ¶ 50 above.

76.     The Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for individual Shipt Shoppers, each of whom are, on information and belief, employed by Shipt as independent contractors.  *See* ¶ 52 above.

77.     The Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the Shipt Consumer App for consumers and/or the user of the Shipt web page at Shipt.com).  On information and belief, when a consumer seeks to place a grocery order using the Shipt Consumer App or Shipt web page, a first request is generated to obtain the work schedule information for the known available independent contractors (Shipt Shoppers) in order to give users delivery time choices.  If acceptable, the user has the option of choosing a delivery time, placing the order and completing the transaction.  *See* ¶ 53 above.

78.     The Accused Instrumentalities comprise a processor associated with a website (the Shipt website) for processing information contained in the first request, and generating a first message containing the at least one of work schedule information and scheduling information for the individual, the independent contractor, the temporary worker, or the freelancer. *See* ¶ 53 above. A processing device is necessarily required to process the information contained in the first request that is generated by the Shipt Consumer App or the Shipt website and to send the scheduling information ("first message") for available Shipt Shoppers to the Shipt Consumer App or the Shipt website. *See* ¶ 54 above.

79.     The Accused Instrumentalities comprise a transmitter for transmitting the first message to the first communication device on, over, or via, the Internet or the World Wide Web. *See* ¶¶ 53 and 54 above. A transmitter is necessarily required to transmit the scheduling information ("first message") for available Shipt Shoppers to the Shipt Consumer App or the Shipt website. *See* ¶ 55 above.

80.     On information and belief, when a consumer submits an order using the Accused Instrumentalities, the order comprises a second request to engage and obtain the Shipt Shopper in

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    28

the vicinity, and to thereafter receive delivery/status information.  On information and belief, the Shipt Shoppers are notified via "push notification" when a new order is available for fulfillment (a "second message").  Shipt Shoppers are notified of available orders (via "second messages") based on their proximity to the store that the consumer has ordered from.  An order is assigned to the first notified Shipt Shopper that accepts the order.  The second request is confirmed, and the consumer is given real-time information regarding the Shipt Shopper's progress via the Shipt Consumer App.  *See* ¶ 56 above.

81.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

82.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT IV**
**Infringement of U.S. Patent No. 10,096,000**

83.    Plaintiff incorporates the above paragraphs by reference.

84.    On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

85.    On information and belief, Defendant has directly infringed at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

86.    The Accused Instrumentalities comprise an apparatus comprising a memory device, a receiver, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals,

independent contractors, temporary workers, and/or freelancers) in the United States. On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States. *See* ¶ 50 above.

87.   On information and belief, the Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters. *See* ¶ 50 above.

88.   The Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for Shipt Shoppers in the Shipt network, each of whom are, on information and belief, employed by Shipt as independent contractors. *See* ¶ 52 above.

89.   The Accused Instrumentalities store work schedule information for each such Shipt Shopper (independent contractor) by virtue of the Shipt Shopper App, which allows Shipt Shoppers to set their availability for fulfilling orders. Shipt Shoppers are notified of open delivery opportunities. *See* ¶¶ 52 and 56 and above.

90.   The Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the Shipt Consumer App for consumers and/or the user of the Shipt web page at Shipt.com). On information and belief, when a consumer seeks to place an order using the Shipt Consumer App or Shipt web page, a first request is generated to obtain the work schedule information for the known available independent contractors (Shipt Shoppers) in order to give users delivery time choices. If acceptable, the user has the option of choosing a delivery time, placing the order and completing the transaction. *See* ¶ 53 above.

91.     On information and belief, when a consumer submits an order using the Accused Instrumentalities, the order comprises a second request to engage and obtain the Shipt Shopper in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the Shipt Shoppers are notified via "push notification" when a new order is available for fulfillment (a "second message").  Shipt Shoppers are notified of available orders (via "second messages") based on their proximity to the store that the consumer has ordered from.  An order is assigned to the first notified Shipt Shopper that accepts the order.  The second request is confirmed, and the consumer is given real-time information regarding the Shipt Shopper's progress via the Shipt Consumer App. *See* ¶ 56 above.

92.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

93.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant has infringed each of the Asserted Patents;

2.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.      Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

4.      Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

5.      Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  July 27, 2021                              Respectfully Submitted

                                                   */s/ René A. Vazquez*
                                                   René A. Vazquez
                                                   Virginia Bar No. 41988
                                                   rvazquez@ghiplaw.com
                                                   M. Scott Fuller
                                                   Texas Bar No. 24036607
                                                   sfuller@ghiplaw.com
                                                   Randall Garteiser
                                                   rgarteiser@ghiplaw.com

                                                   **GARTEISER HONEA, PLLC**
                                                   119 W. Ferguson Street
                                                   Tyler, Texas 75702
                                                   Telephone: (903) 705-7420
                                                   Facsimile: (888) 908-4400

                                                   **ATTORNEYS FOR**
                                                   **GREATGIGZ SOLUTIONS, LLC**